## Case No. 2,819.

### CLARK v. The ELLEN.

[32 Hunt, Mer. Mag. 716.]

District Court, N. D. New York. 1855.

COLLISION BETWEEN STEAM VESSELS — CROSSING COURSE—ERRONEOUS MANEUVER.

[A towboat left a landing just above a ferry slip in the East river, started down, and across the course of an incoming ferry boat. On discovering the latter, she stopped and backed, when, had she kept on, the collision complained of would not have ensued. *Held*, that the towboat was in fault in not making at once for the center of the stream as required by local laws, and in starting ahead at such time, and that the ferry boat had a right to presume that the towboat would not be suddenly put in motion or as suddenly stopped, and was, therefore, not in fault.]

[In admiralty. Libel by Oliver N. Clark, owner of the towboat King Philip, against the ferry boat Ellen, to recover damages sustained by collision.]

HALL, District Judge. This libel is filed by the owner of the steamboat King Philip, to recover the damages occasioned by a collision between the two steamboats, which happened September 14, 1853, in the East river, near the slip on the Brooklyn side of the Catherine ferry. The Ellen was one of the regular ferry boats at that ferry, and was crossing from New York. The King Philip was a towboat about the harbor, and was bound from Grand street to Staten Island. She had stopped just above the ferry to take a schooner in tow, but not succeeding in obtaining the job, she started ahead, straight down the river. The Ellen was in sight, heading for her slip before the King Philip started. The King Philip went on until about abreast of the upper slip of the ferry, when the Ellen was discovered, and the engine was stopped and backed, but the Ellen came into her, striking her nearly at right angles. The engine of the Ellen was stopped, and backed, but at the last moment. The collision occurred about three or four o'clock in the afternoon, and the tide was flood.

Held, by the court, that upon the proofs there was no proper lookout on board the King Philip. That it was the duty of the King Philip, when she started ahead, in accordance with the state law of April, 1848, to take such measures as would bring her to the center of the river, by the most direct and shortest route which was practicable under the circumstances, and to do so she would necessarily also follow the general rule of navigation by porting her helm as she approached the Ellen. That on the evidence she was so far above the Ellen, that, if she had so done, she would have passed under the Ellen's stern. But if she was not distant enough to have done so, as was claimed by the libelant, a difficult duty was imposed upon her. She was at rest, and could choose her own time for changing her position. The Ellen was in full view, and her purpose, and destination, and speed were sufficiently known; and those in charge of the King Philip knew, or were bound to know, the capabilities of their own vessel. They were also bound to know whether or not she could get under way and pass under the bows of the Ellen with safety, and, if she could not, she should have remained at rest until the Ellen had so far passed that the King Philip could pass in safety under her stern. The Jamaica [Case No. 7,173]. That the King Philip, therefore, was in fault, whatever her position was. That it is probable also that, if her engines had not been stopped, she would have passed the slip before the Ellen reached it, and no collision would have taken place. That the pilot of the Ellen had a right to assume that no steamer lying at rest at a safe distance above his track would suddenly be put in motion and run directly under his bows, so as to block the entrance into the slip, and especially that no steamer would suddenly get under way to cross his bows, and then as suddenly reverse her engine so as to block the entrance. And when he saw the wheels of the King Philip in motion, he was bound to act upon the supposition that the statute and the laws of navigation would be complied with until a contrary intention was clearly manifested. He was right in relying upon the proper navigation of the King Philip until the last moment, and then the engine was stopped and backed, and the helm ported, which was the proper course under the circumstances.

Libel dismissed, with costs.